O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PASHAIE and SHAHLA PASHAIE,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>H77LA, LLC,<br><br>　　　　　　　Defendant. | Case No.: 2:23-cv-06567-MEMF-AJR<br><br>**ORDER HOLDING DEFENDANT IN CONTEMPT FOR VIOLATION OF COURT ORDER AND SETTING ORDER TO SHOW CAUSE AS TO WHY COUNSEL FOR DEFENDANT SHOULD NOT BE SANCTIONED** |

## I.　Background

The Court has previously summarized the factual allegations of this case in its order granting preliminary injunction, issued on December 7, 2023. ECF No. 33 ("PI Order"). In particular, the case involves a dispute between two neighboring property owners—Plaintiffs Michael and Shahla Pashaie (the "Pashaies"), who own the property downslope of Defendant H77LA, Inc. ("H77LA"). The Pashaies entered into a restrictive covenant with the prior owners of the property, now owned by H77LA, which the Pashaies allege prohibit H77LA from construction activities that H77LA seeks to conduct and has been conducting.

/ / /

1

### A. Procedural History

On September 28, 2023, the Pashaies moved this Court for a preliminary injunction to restrict the construction activities of H77LA in accordance with the Pashaies' interpretation of a recorded covenant. ECF No. 13. On December 7, 2023, the Court granted a preliminary injunction enjoining H77LA from the following conduct:

1. Conducting any further construction without written consent from the Pashaies on the slope portion of the Sierra Mar Property (the "Property"), defined as the whole slope including the slope portion of the property where the current structure is located, but excluding remodeling strictly to the interior of the structure; and

2. Constructing any pool on the property unless it is a rectangular pool compliant with the dimensions specified in Section 1 of the October 1, 1992 Slope Agreement (the "Slope Agreement"), until a resolution is reached in this lawsuit.

PI Order at 14. In the PI Order, the Court added the following:

> At the hearing, counsel for H77LA raised concerns that to the extent an injunction is granted that enforces the right of the Pashaies to approve H77LA's construction, the Pashaies would be able to unreasonably withhold their approval. However, at this point, H77LA has not presented any evidence, nor can the Court presume, that the Pashaies would violate the implied covenant of good faith and fair dealing inherent to every contract under the law. *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 57 (2002) (explaining that "when a party is given absolute discretion by express contract language, the courts will imply a covenant of good faith and fair dealing . . . and avoid a finding that the promise is illusory"). Nevertheless, to the extent that H77LA believes that the Pashaies are unreasonably withholding their approval, it may file a motion with the Court as necessary.

PI Order at 12, n.14. The injunction took effect on January 3, 2024, when the Pashaies entered bond. ECF No. 34.

On April 29, 2024, H77LA moved ex parte for an order permitting it to conduct waterproofing and sealing activities on the Property. ECF No. 39 ("H77LA Ex Parte"). On May 6, 2024, the Pashaies also moved ex parte for an order to show cause as to why H77LA should not be held in contempt for violation of the Court's PI Order. ECF No. 43. On May 28, 2024, the Court found that it was "clear" based on the record of the ex partes that H77LA had conducted construction in violation of the PI Order. ECF No. 58 ("Ex Parte Order") at 6. The Court issued an order denying H77LA's ex parte and granting the Pashaies' ex parte. *Id.* The Court set an order to

show cause as to why H77LA should not be held in contempt on June 6, 2024, instructing H77LA to explain to the Court:

1. What construction, if any, has been done on the slope portion of the Property since January 3, 2024;

2. If any construction has been done, why consent was not first sought or not necessary to be sought.

*Id.* at 6–7.

On May 31, 2024, counsel for H77LA emailed the Court requesting that the OSC hearing be continued from June 6, 2024, to June 13, 2024. *See* ECF No. 73-1 at 3. Counsel for H77LA stated that the reason for the request was because the witnesses that were planned to be presented were "not all available on June 6, 2024, but will be available the following Thursday, June 13, 2024." *Id.* The Court accordingly continued the OSC hearing to June 13, 2024. ECF No. 61. On June 12, 2024, the parties filed a stipulation to continue the OSC Hearing from June 13, 2024, to June 20, 2024. ECF No. 65. In particular, the stipulation noted that the continuance was "due to Defense counsel's religious obligation, and that of one of Defendant's witnesses," for which the Pashaies agreed to accommodate. *Id.* at 2. The Court ultimately continued the OSC hearing to July 2, 2024, after confirming the availability of the parties. ECF Nos. 66, 71.

On June 28, 2024, the Pashaies filed a Notice of Ongoing Construction Activities in Support of Order to Show Cause, and included evidence of what they alleged to be ongoing construction in violation of the Court's prior orders, even after the Ex Parte Order. ECF No. 73.[1]

**B. OSC Hearing**

On July 2, 2024, the Court held the OSC hearing. Counsel for both parties gave opening statements, and the Pashaies presented a direct examination of Michael Pashaie and Alan Lazar. H77LA conducted a cross-examination of Lazar. ECF No. 80 ("Day 1 Transcript"). The Pashaies rested their case. The Court continued the hearing to July 16, 2024, and July 17, 2024. ECF No. 86.

---

[1] H77LA filed an objection to the evidence submitted in the Pashaies' filing, which the Court resolved at the OSC hearing. ECF No. 74. In particular, the Court only considers evidence in this Order that has been properly authenticated by a witness that H77LA has had a full and fair opportunity to cross-examine.

On July 16, 2024, H77LA brought an oral motion to discharge the OSC, arguing that the Pashaies had failed to present evidence of monetary or economic damages beyond attorney's fees. ECF No. 95 ("Day 2 Transcript") at 8–9. The Court found that the authority cited by H77LA[2] did not prohibit the Court from finding H77LA in contempt, and denied the motion without prejudice. *Id.* H77LA proceeded to examine Pashaie as an adverse witnesses.

On July 17, 2024, H77LA renewed its motion to discharge, arguing that the Pashaies had not met their burden of establishing by clear and convincing evidence that H77LA had violated the Court's orders willfully, that even if there was a violation it was only a technical one, and that regardless, the orders and the Slope Agreement itself were unclear. The Court denied the motion without prejudice. H77LA then presented the testimony of Hany Messiha (the civil engineer in charge of H77LA's remodeling project), Andrey Svetakov (the project superintendent for H77LA's contractor),[3] and Aidin Khoei (the architect designer involved with H77LA's remodel project). At the close of the hearing, the Court orally made a finding that the Pashaies had established by clear and convincing evidence that H77LA had violated the Court's PI Order and Ex Parte Order, and that H77LA's actions doing so were intentional. Accordingly, the Court found H77LA in contempt.[4]

### A. Factual Findings

Based on the evidence presented at the OSC hearing and the record before it, the Court makes the following factual findings.

H77LA first sought consent for waterproofing and sealing activities on January 31, 2024, only after the Pashaies contacted H77LA expressing concern with what they observed to be ongoing construction at the Property. ECF No. 39-1 ("Pessah Decl.") at 2. In H77LA's communication, H77LA affirmatively states that it "had to take urgent measures to waterproof and seal" the property

---

[2] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993); *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361 (9th Cir. 1987).

[3] Although it appears that Igal Azran, the principal contractor and Svetakov's supervisor, came to the first two days of the OSC hearing, H77LA did not ultimately present any testimony from Azran.

[4] Although the Court stated it intended to also hold counsel for H77LA in contempt, the Court noted that as counsel was not previously put on notice, the Court would refrain from holding counsel in contempt at this time. ECF No. 98. However, the Court will set an order to show cause as to why counsel for H77LA should not be held in contempt and will allow counsel for H77LA to respond in writing.

as of January 31, 2024. *Id.*, Ex. A. Counsel for H77LA further affirmed H77LA's view that "[w]aterproofing does not involve construction, *per se*. . ." *Id.* On February 1, 2024, the Pashaies granted conditional approval for H77LA to complete waterproofing and protective activities on the Property, including using tarps. *Id.*, Ex. B. However, the Pashaies specified that their conditional approval was "not a blanket approval for anything that, according to Defendant's own contractors, can be considered 'waterproofing' or 'protection.'" *Id.* According to Svetakov, H77LA had previously attempted the usage of tarps before January 1, 2024. Day 3 Transcript; Exhibits 26-29.

On February 2, 2024, H77LA responded to the Pashaies, stating that "Waterproofing is not a violation of the Court's order." *Id.*, Ex. C. Counsel for H77LA stated that "waterproofing is not tantamount to construction," and that "[w]aterproofing is not construction, full stop." *Id.* Notably, H77LA represented that it "*will not*, and cannot, limit its waterproofing activities" to using tarps, and rejected the notion that consent was required to complete any waterproofing activities. *Id.* (emphasis added). Messiha testified that waterproofing is construction, and Svetakov testified that waterproofing under "normal circumstances" would be considered construction. Day 3 Transcript. On February 13, 2024, counsel for H77LA noted that although it had "halted waterproofing," it intended to resume doing so. *Id.*, Ex. D. Counsel for the Pashaies requested further clarification on what type of waterproofing H77LA intended to do. *Id.*, Ex. E. As of February 20, 2024, H77LA had not responded to the request for further detail, and the Pashaies reiterated their concerns about "what is being defined as 'waterproofing.'" *Id.*, Ex. F.

On March 21, 2024, counsel for the Pashaies noted that H77LA had still not responded to the Pashaies' request for more detail on what activities H77LA intended to pursue as "waterproofing," "despite several follow up attempts." *Id.*, Ex. G. On April 12, 2024, H77LA reiterated its position that it did not need any consent to conduct its waterproofing activities, and that "[s]uch activities do not entail constructing any structures at the property or on what the Court has interpreted as the 'slope.'" *Id.*, Ex. J. On April 15, 2024, counsel for the Pashaies noted that the Pashaies had seen further exterior construction, and would be deciding soon to seek court intervention. *Id.*, Ex. L. According to testimony from Svetakov and Pashaie, construction on the roof was done around March or April, including the installation of the skylight dome on the roof. Day 1 Transcript 117:7–

13; Day 3 Transcript. Svetakov also testified that to seal the hole in the roof, they could have put a piece of glass on it, but it would not have been the "skylight in the plans." Day 3 Transcript. On April 29, 2024, counsel for H77LA gave the Pashaies notice of its intent to move ex parte for an order permitting H77LA to complete waterproofing and sealing activities on the Property, and further to allow other activities to protect the Property. *Id.*, Ex. M.

On May 28, 2024, the Court's ruling on H77LA's ex parte stated as follows: "The Court will take this opportunity to remind the parties that the injunction prohibits H77LA from 'conducting any [] construction without written consent from the Pashaies on the slope portion of the Sierra Mar Property' and does not limit that prohibition on how the construction is characterized, the purpose of the construction, or how important or necessary H77LA determines that it is." Ex Parte Order at 4. "Whether the work was necessary for waterproofing or sealing is irrelevant," as "the PI Order did not make any exception as to waterproofing or sealing activities (nor did H77LA seek any such exception)." *Id.* at 6.

After May 28, 2024, construction on the exterior of the house continued. *See, e.g.,* Day 1 Transcript 143:1-21; Exhibits 4-11. In particular, Svetakov testified that he had a conversation with his supervisor that all activity had to cease, but he "took initiative" to install sliding glass doors once they arrived on or around June 15, 2024—given that H77LA had been waiting for the doors to be delivered from overseas for nearly a year, he did not want to risk storing them on the Property, and he wanted to install them to provide additional waterproofing. Day 3 Transcript. Svetakov explained that the standard schedule for installation is to install things as soon as the items arrived—and accordingly, the skylight was installed as soon as it was received, as well as the sliding doors. *Id.*

## II.    Applicable Law

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *In re Dual-Deck*, 10 F.3d at 695 (internal citations omitted). To find a party in civil contempt, the "moving party has the burden of showing by clear

and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).[5]

### III.    Discussion

For the reasons discussed below, the Court finds H77LA in contempt.

### A.    The Court Finds That H77LA Violated the Court's Prior Orders

It was clear from the evidence presented that—despite being ordered not to conduct any further construction without approval of the Pashaies—H77LA conducted further construction after the entry of the injunction without approval of the Pashaies. This construction included, at the very least, construction on the roof (including installation of the skylight). Even after the issuance of the Ex Parte Order—which reiterated the provisions of the preliminary injunction order and advised the parties that the preliminary injunction order made no exception for purported "waterproofing and sealing activities," H77LA conducted even more construction, including installation of the sliding glass doors.

H77LA apparently maintains that construction on the roof and installation of the sliding glass doors constitutes "waterproofing and sealing" and not "construction." This is belied by common sense; of course, installation of sliding doors is construction, regardless of whether it also serves to waterproof and seal the property. H77LA's position is also belied by the evidence at the hearing which showed that these activities were and are commonly considered construction by the individuals responsible for the project, and that the activities were all part of the original construction plans. There was no evidence even suggesting that any of these activities were engaged in solely for the purpose of waterproofing and had not been part of the original plans. What is

---

[5] The Court notes that in closing argument, counsel for the Pashaies appeared to characterize some of the remedies sought as punitive in nature, which would require a finding of criminal contempt. *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) ("The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive."). However, as the Court's Ex Parte Order did not reference criminal contempt, the Court solely makes a finding of civil contempt at this time. To the extent that the Pashaies believe that a finding of criminal contempt is warranted, they may brief this issue separately at the time they submit briefing regarding the remedies sought.

patently clear is that if H77LA adjusted its conduct at all in response to the PI Order, it was merely to scale back construction to those pre-planned construction activities that it—in its sole discretion—deemed necessary for waterproofing.

Thus, the Court finds that H77LA violated the Court's preliminary injunction order—a specific and definite order of the Court.

**B.      The Court Finds that H77LA Acted Intentionally And Not In Good Faith**

H77LA has failed to show that it was unable to comply with the preliminary injunction order or that its construction activities were based on a good faith and reasonable interpretation of the order. To the contrary, the evidence shows that H77LA acted intentionally and not in good faith.

H77LA has suggested that it understood the preliminary injunction order to permit "waterproofing and sealing," or at the very least that the preliminary injunction order was vague as to whether waterproofing and sealing activities were permitted. Although in "certain circumstances vagueness can operate as a defense to contempt," "where a party has bypassed opportunities to present its asserted vagueness claim on appeal or through a motion to clarify or modify the injunction, the party cannot disregard the injunction and then object to being held in contempt when the courts conclude that the injunction covered the party's conduct." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 886 (Fed. Cir. 2011). A party who undertakes "to make their own determination" of what a court order means "act[s] at their own peril." *Id.* (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). The fact that H77LA continued its construction even after the Court clarified that the preliminary injunction order prohibited even construction that could be considered "waterproofing" demonstrates that H77LA's violation of the Court's preliminary injunction order was not due to a good faith belief that H77LA's conduct was permitted. Even Svetakov's testimony made clear that H77LA "took the initiative" and determined what activities should continue based upon what was needed to protect the property, not because of any understanding that the Court permitted construction to protect the property.

H77LA has also suggested that the Pashaies were unreasonably withholding consent to conduct necessary waterproofing activities. But the Court made very clear to H77LA in the preliminary injunction order what it should do if the Pashaies were to unreasonably withhold

consent. Rather than seek consent before engaging in construction, and rather than seeking permission from the Court if and when such consent was unreasonably withheld, H77LA continued construction, virtually unabated, for the entire first half of this year. This brazen course of conduct clearly shows bad faith.

Finally, much of H77LA's argument and witness examination at the OSC hearing seemed geared toward proving that the Slope Agreement was invalid or that the Court's preliminary injunction order did not accurately capture H77LA's obligations under the Slope Agreement. Even if H77LA believed that the Slope Agreement or the preliminary injunction order was invalid, the proper course of conduct was to seek review of the order. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 387 (1980) (explaining that the "established doctrine" is that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order"); *see also Zapon v. U.S. Dept. of Justice*, 53 F.3d 283, 285 (9th Cir. 1995) (noting that "obedience to even an assertedly void [] order is required unless and until it has been vacated or reversed"). H77LA chose not to do that, further demonstrating its lack of good faith.

***

Given that the Pashais showed by clear and convincing evidence that H77LA violated a specific and definite order of the court, the burden shifted to H77LA to demonstrate why it was unable to comply. It utterly failed to do so.

The Court finds H77LA in contempt.

***

**<u>Order to Show Cause Why H77LA's Counsel Should Not Be Sanctioned for Violating Rule 11 and the Local Rules of this Court</u>**

At the close of the evidentiary hearing, counsel for the Pashaies argued that H77LA's counsel had engaged in a "pattern and practice" of bad faith conduct and should be held in contempt along with H77LA itself. Although the Court was originally inclined to find H77LA's counsel in contempt for its role in H77LA's contemptuous conduct, neither the Pashaies' original contempt request (ECF Nos. 43, 53) nor the Court's original Order to Show Cause (ECF No. 58) put H77LA's

counsel on notice that it might be held in contempt and what conduct might be considered contemptuous. *See* ECF No. 98. Should the Pashaies still seek to have this Court hold H77LA's counsel in contempt, they will be required to file a properly noticed motion with appropriate support.

Nevertheless, the Court's findings above with respect to H77LA's conduct suggest to the Court that H77LA's counsel may have violated Rule 11 of the Federal Rules of Civil Procedure and the corresponding Local Rules in its briefing in support of the H77LA Ex Parte. ECF No. 39. Rule 11(a) requires each application and other paper filed to be signed by an attorney and Rule 11(b) establishes that the signature of an attorney on an application is that attorney's certification that:

> (1) [the application] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*See* Rule 11(b). Rule 11(c)(1) also permits the Court to impose an appropriate sanction for a violation of this certification after reasonable notice and an opportunity to respond. *See Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) (explaining that Rule 11(c) allows sanctions if a filing is either "legally frivolous" or "factually misleading").

The Court's factual findings and the evidence presented at the hearing in support thereof supports a finding that H77LA's Ex Parte, and counsel's declarations in support thereof violated Rule 11. H77LA's entire ex parte application was based upon the premise that it sought direction from the Court as to whether the waterproofing and sealing activities were permitted. H77LA Ex Parte at 2 ("H77LA . . . hereby seeks . . . a court order permitting Defendant to complete specific and limited waterproofing and sealing activities at the Sierra Mar Property."); 4 ("[H77LA] seeks an emergency order confirming that its waterproofing and sealing activities are not a violation of the Order, and expressly permitting Defendant to prevent further irreversible damage to Sierra Mar by completing the waterproofing and sealing of the property . . . ."). The fact that H77LA—upon receiving explicit direction from the Court that these activities were *not* permitted—continued these activities suggests that the ex parte was presented for an "improper purpose" and was also not

"warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Rule 11(b)(1), (b)(2).

Accordingly, per Rule 11(c)(3), H77LA's counsel is ORDERED to show cause as to why its conduct has not violated Rule 11(b) and why it should not be sanctioned for any violation.

Similarly, Local Rule 83-7 permits this Court to impose sanctions for violation of or failure to conform to this Court's Local Rules. The conduct described above would appear to violate this Court's Local Rules as well—including, in particular, Local Rule 11-9 regarding the presentation to the Court of frivolous motions. H77LA's counsel is ORDERED to show cause why its conduct has not violated Local Rule 11-9 and why it should not be sanctioned for any violation.

## IV.   **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. H77LA is hereby held in contempt;

2. The parties are ordered to brief the question of whether and what the Court should order demolished as a remedy for H77LA's contempt;

3. The parties are ordered to brief the question of whether, in what amount, and to whom H77LA shall be ordered to pay monetary sanctions in view of its contempt;

4. H77LA's counsel is ordered to show cause as to why its conduct has not violated Rule 11(b) of the Federal Rules of Civil Procedure and Local Rule 11-9 and why it should not be sanctioned for any violation;

5. The Court sets the briefing schedule for items 2 and 3 above as agreed on by the parties (ECF Nos. 99, 100):

    a.   The Pashaies' opening briefs will be due on August 1, 2024;

    b.   H77LA's opposition briefs will be due on August 15, 2024;

    c.   The Pashaies' reply briefs will be due on August 22, 2024; and

6. As to item 4 above, the Court sets the following briefing schedule[6]:

    a.   Counsel for H77LA's response will be due on August 15, 2024;

---

[6] The parties may submit a stipulation amending the briefing schedule if necessary.

b. A response, if any, from the Pashaies will be due on August 22, 2024;

c. Counsel for H77LA's reply brief, if any, will be due on September 5, 2024; and

7. The Court will determine whether or if any additional hearings are needed.


IT IS SO ORDERED.


Dated: July 22, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge